UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LANCE K. POULSEN and BARBARA
POULSEN,

       Plaintiffs,

     -against –

HAROLD W. POTE, THOMAS G.
MENDELL and J.P. MORGAN CHASE
& CO.,

       Defendants.

---

Civil Action No. 05CV10575

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND
## OR IN THE ALTERNATIVE
## MOTION FOR ABSTENTION

The Plaintiffs, Lance Poulsen and Barbara Poulsen (collectively "Plaintiffs" or "Poulsens"), submit this Memorandum of Law in support of the Plaintiffs' Motion to Remand or in the alternative Motion for Abstention. The Plaintiffs move to remand the above captioned action to the Supreme Court of the State of New York, County of New York for lack of subject-matter jurisdiction because this action is not "related to" a pending bankruptcy case pursuant to 28 U.S.C. § 1334(b). In the alternative, the plaintiffs move that this Court exercise mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2), permissive abstention under 28 U.S.C. § 1334(c)(1) or grant an equitable remand under 28 U.S.C. § 1452(b) and remand the above captioned action to the Supreme Court of the State of New York, County of New York, and state in support:

## INTRODUCTION

The Plaintiffs filed a civil action against Defendants Harold W. Pote ("Pote"),
Thomas G. Mendell ("Mendell") and JP Morgan Chase & Co. ("JP Morgan")
(collectively "Defendants") in the Supreme Court of the State of New York, County of
New York, Index No. 05-604034 ("state action") alleging only state law claims for
damages sustained by Pote and Mendell's actions, as authorized and ratified by their
employer, JP Morgan. The state action , incorporated herein by reference, asserts claims
against Pote and Mendell for fraud, fraudulent concealment, breach of fiduciary duty,
civil conspiracy, negligent misrepresentation, intentional misrepresentation, gross
negligence, negligence, and constructive fraud. The Plaintiffs do not assert any
independent claims against JP Morgan, nor do they assert any claims against any person
or entity in bankruptcy. None of the Defendants in this case are debtors in the NCFE
bankruptcy proceedings.

The Plaintiffs' claim *inter alia* that Pote and Mendell breached their duties as co-
directors to the Plaintiffs and that the Plaintiffs justifiably relied upon the Defendants'
false representations and concealments, resulting in the individual loss of the "enormous
value of their expected Preferred Stock in an IPO [Initial Public Offering]" and the loss
of "their original investment plus millions of dollars in additional investments in the
company's preferred stock in July 2002 based upon the favorable assurances of Pote
concerning the Deloitte & Touche audit." It is further alleged that "the Plaintiffs' injuries
and damages are separate and distinct from any loss to NCFE and its subsidiaries." See

e.g. state action ¶¶ 78, 106, 112, 125, 135. The reference to the stock value in the Plaintiffs' complaint is a reflection of the measure of damages, rather than the cause of action. This state action does not claim that the Defendants owed any duty to the NCFE entities. The duties owed by the Defendants were to the Plaintiffs as co-directors and fiduciaries. See e.g. state action ¶ 92, 118, 104, 130, 140, 147,

The Plaintiffs brought the state action pursuant to the common law of the State of New York and the duties of corporate directors as stated in New York Business Corporations Chapter 4, Article 7, including but not limited to § 720 (Action against directors and officers for misconduct), which provides the Plaintiffs relief for Pote and Mendell's neglect, failure to perform or other violation of their duties in the management and disposition of corporate assets committed to them.

Notably, there is no necessity that the NCFE entities be found wrongdoers for the Plaintiffs to recover against the Defendants. Indeed, the Plaintiffs present the opposite argument: the NCFE entities did not injure the Plaintiffs; rather, Pote and Mendell's misdeeds as co-directors caused damage to the Plaintiffs. The payment of any judgment will not come from the NCFE entities; it will come from Pote, Mendell or their employer JP Morgan for ratifying, authorizing or confirming its employees' actions. Consequently, the Plaintiffs do not seek any compensation from the NCFE entities, which would not even be bound by any decision in this state action.

Moreover, the Plaintiffs present no federal claims. Indeed, the defendants have conceded that the state action is a "non-core proceeding, and Defendants do not consent to the entry of final orders and judgments by a bankruptcy judge." See Notice of Removal, ¶ 10.

3

Recognizing they could not remove the case on the basis of diversity or federal question jurisdiction, the defendants assert that 28 U.S.C. § 1334(b)[1] and 28 U.S.C. § 1452(a)[2] and In re Global Crossing, Ltd. Securities Litigation, 2003 WL 22705127, *1 (S.D.N.Y. Nov. 14, 2003) provide the purported basis for removal to this Court. The Defendants erroneously reason that this state action "relates to" the bankruptcy of National Century Financial Enterprises ("NCFE") and its affiliates including National Premier Financial Services, Inc. ("NFPS"), NPF VI, Inc. ("NPF VI") and NPF XII, Inc. ("NPF XII") (collectively the "NCFE entities").

The defendants present four conclusory arguments in support of their flawed contention that the Plaintiffs' independent claims allegedly relate to the NCFE entities' bankruptcy estate:

a)   The Poulsens' claims "belong exclusively to the NCFE Entities' bankruptcy estate" See Notice of Removal, ¶¶ 5-6;

b)   The Defendants have "potential rights of contribution, indemnification, and insurance against the NCFE Entities...asserted...against the NCFE bankruptcy estates." See Notice of Removal, ¶ 7;

c)   The Defendants "are eligible for Director & Officers Liability Insurance" See Notice of Removal, ¶¶ 8; and

d)   The Plaintiffs have allegedly "submitted to the jurisdiction of the bankruptcy court by filing proofs of claim against the NCFE Entities in the NCFE Bankruptcy Proceedings." See Notice of Removal, ¶¶ 9.

---

[1] 28 U.S.C. § 1334(b) (Bankruptcy Cases and proceedings) provides: "Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [Bankruptcy], or arising in or related to cases under title 11."

[2] 28 U.S.C. § 1452(a) (Removal of claims related to bankruptcy cases) provides: "A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 [Bankruptcy cases and proceedings] of this title."

The Defendants' subject matter jurisdiction arguments fail to contemplate that (1) none of the NCFE entities are Defendants in this action, (2) none of the Defendants in this action are debtors in the NCFE bankruptcy proceedings, or (3) in this action, the Poulsens are not seeking any damages from, and none of their claims affect, any property belonging to the NCFE entities. Thus, the Poulsens' claims are obviously individual claims that are unrelated to any bankruptcy proceeding. The NCFE entities can have no claim to the Poulsens' personal funds invested in NCFE, the loss of value of expected Preferred Stock in an IPO or Lance Poulsen's Employment Agreement. Plainly, adjudication of the state action will have no discernible effect on the administration of any bankruptcy proceedings. Thus, the Defendants contention that there is "related to" jurisdiction is misplaced both on the law and the particular facts of the state action. Moreover, even assuming that there is a basis for removal to this court, this Court is required to or, in the alternative, should abstain from exercising its jurisdiction pursuant to 28 U.S.C. §1334 (c).[3]

## DISCUSSION

I.      **General legal principles of removal based upon "relation to"
        bankruptcy proceedings mandate remand**

The Defendants, seeking to remove an action from state to federal court, bear the burden of proving federal jurisdiction. See Linardos v. Fortuna, 157 F.3d 945, 947 (2d

---

[3] 28 U.S.C. §1334 (c) provides: "Except with respect to a case under chapter 15 of title 11 [Ancillary and other Cross-border cases], nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

Cir. 1998). Questions as to whether federal jurisdiction exists are resolved against removability. Lupo v. Human Affairs Int'l, 28 F.3d 269, 274 (2d Cir. 1994).

The Defendants claim that this state action is "related to" the NCFE entities bankruptcy proceeding.  28 U.S.C. § 1334(b) provides in relevant part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising in or related to cases under title 11." There is no contention that this state action arises under bankruptcy law.

Proceedings "related to" a bankruptcy case include "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995). Here, there is no claim by the debtor; therefore, the Defendants must claim that the state action will have an "effect" on the NCFE entities bankruptcy estate.

The definition of a "related" proceeding under Section 1334(b) was first articulated by the seminal Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). As stated in that case, the "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id.

An action is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id. The Court cautioned that "the mere fact that there may be common issues of fact between a civil

6

proceeding and a controversy involving the bankruptcy estate does not bring the matter

within the scope of section [1334(b) ] as "there must be some nexus between the 'related'

civil proceeding and the title 11 case." Id. (citation omitted).

The Second Circuit has adopted the Pacor test for determining whether a civil

proceeding is "related to" a bankruptcy proceeding under Section 1334(b), noting that

proceedings that are "tangential" or have a tenuous link to bankruptcy are outside the

related nexus. In re Turner, 724 F.2d 338, 341 (2d Cir. 1983)( "Situations will

undoubtedly arise in which the controversy is so tangential to the title 11 case that a court

will hold that the case neither arises in nor is related to the title 11 case. In such cases, the

bankruptcy court may decide that the exiguous nature of the relationship between the

proceeding and the bankruptcy case is such as to fall without the court's jurisdiction.").

The Second Circuit clarified its reliance on the Pacor test in In re Cuyahoga

Equip. Corp., 980 F.2d 110 (2d Cir. 1992), noting that the test for determining whether

litigation has a significant connection with a pending bankruptcy proceeding is whether

its outcome might have any "conceivable effect" on the bankrupt estate. If that question is

answered affirmatively, the litigation falls within the "related to" jurisdiction of the

bankruptcy court. Id. at 114.

Thus, the rule in the Second Circuit is that a case is "related to" a bankruptcy case

within the meaning of this statutory provision if it has a "significant connection" with the

pending case or its outcome might have "any 'conceivable effect' ' on the debtor's estate.

In re Cuyahoga Equip. Corp., 980 F.2d at 114 (2d Cir. 1992) (citations omitted)("The test

for determining whether litigation has a significant connection with a pending bankruptcy

proceeding is whether its outcome might have any conceivable effect on the bankrupt estate.")

A proceeding between non-debtors has a "conceivable effect" on the bankruptcy estate where the dispute would "affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights and liabilities." In re Manshul Construction Corp., 225 B.R. 41, 45 (Bankr.S.D.N.Y. 1998). However, the "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]. Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). Thus, an "extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." In re Salem Mortgage Co., 783 F.2d 626, 634 (6th Cir. 1986).

II.     **The Poulsens' state action claims are not**
        **"related to" the NCFE entities bankruptcy estate,**
        **and this Court lacks subject matter jurisdiction.**

The Plaintiffs' state action against Pote and Mendell alleges individual claims for damages sustained by Pote and Mendell's actions, as authorized and ratified by their employer, JP Morgan. The state action asserts state law claims against Pote and Mendell for fraud, fraudulent concealment, breach of fiduciary duty, civil conspiracy, negligent misrepresentation, intentional misrepresentation, gross negligence, negligence and constructive fraud.

The Plaintiffs do not assert any independent claims against JP Morgan, nor do they assert any claims against any person on entity in bankruptcy; rather, the Plaintiffs' claim *inter alia* that Pote and Mendell breached their duties as co-directors to the

Plaintiffs pursuant to the common law of the state of New York and the duties of corporate directors as stated in New York Business Corporations Chapter 4, Article 7 and that the Plaintiffs justifiably relied upon the Defendants false representations and concealments, resulting in the individual loss of the "enormous value of their expected Preferred Stock in an IPO [Initial Public Offering]," the loss of "their original investment plus millions of dollars in additional investments in the company's preferred stock in July 2002 based upon the favorable assurances of Pote concerning the Deloitte & Touche audit." It is further alleged that "the Plaintiffs' injuries and damages are separate and distinct from any loss to NCFE and its subsidiaries." See e.g. state action ¶¶ 78, 106, 112, 125, 135.

Manifestly, the claims of the removed state action are not asserted against the NCFE entities at all. They are premised on *inter alia* allegations of a breach of fiduciary duty and fraud by Pote and Mendell. Resolution of the issues between these Plaintiffs and Defendants does not require resolution of the validity or proper scope of any claims by Defendants against the NCFE entities and will have no effect on the bankruptcy estate. A finding that Pote or Mendell is liable is completely independent of any finding that the NCFE entities engaged in wrongful conduct because, for it to be otherwise, Pote and Mendell would have to claim that they did commit fraud and wrongful acts. Complete relief can be accorded between the parties without any decision adverse to NCFE. Indeed, the Plaintiffs do not contend that the NCFE entities engaged in any wrongdoing and, regardless of the fact that the NCFE entities are in bankruptcy, the plaintiffs could not have sued the NCFE entities for the causes stated in the state action. Hence, the NCFE entities are neither indispensable parties to the litigation nor interconnected with

9

the Plaintiffs' theories of liability. Simply put, the outcome of the state action does not have the potential to alter the distribution of the NCFE entities estate to creditors.

The state action will not alter the NCFE entities rights, liabilities, options, or freedom of action (either positively or negatively) and will not impact the handling and administration of the bankrupt estate. If the Poulsens recover, the judgment will be paid by Pote, Mendell and/or JP Morgan. If the Poulsens do not recover, no payments will be made. In either scenario the NCFE entities will pay nothing. Moreover, these state action claims are obviously claims owned exclusively by the Poulsens because the NCFE entities can have no claim to the Poulsens' personal funds invested in NCFE, the loss of value of expected Preferred Stock in an IPO or Lance Poulsen's Employment Agreement. Therefore, this Court lacks subject matter jurisdiction because the state action is not "related to" the NCFE entities' bankruptcy estate in any way.

III.    **Issues regarding contribution, indemnification and insurance are not "related to" the NCFE entities bankruptcy estate**

The Defendants claim that they "have asserted contractual, statutory and other rights of indemnity, contribution, and reimbursement against the NCFE Entities' bankruptcy estates." See Notice of Removal, ¶ 7. The Defendants do not proffer the mechanism for their assertion of contractual, statutory or other rights of indemnity, contribution, and reimbursement. The  mere "assertion" of a right to indemnity, contribution, and reimbursement, even accepting Pote and Mendell's dubious assertion that they are entitled to indemnification from the company they harmed,  is insufficient to create "related to" jurisdiction.

In <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984 (3d Cir. 1984), the Court rejected a nondebtor defendant's similar assertion that "related to" jurisdiction existed because of its potential indemnification claims against the bankruptcy estate. The Court noted that a lawsuit against a nondebtor could not result in "even a contingent claim" against the debtor because the nondebtor defendant would be required to bring "an entirely separate proceeding to receive indemnification." <u>Id.</u> 743 F.2d at 995. Thus, the <u>Pacor</u> Court held that a lawsuit against a distributor of asbestos was not "related to" the bankruptcy of the asbestos manufacturer, since it was "[a]t best ... a mere precursor" to a claim for indemnification. <u>Pacor,</u> 743 F.2d at 995.

The Defendants' claim of a potentiality of contingent liability is based on a recitation of section 3.01 of the NPF VI, Inc. Health Care Receivable Securitization Program Notes Master Indenture ("NPF VI Master Indenture"), where NPF VI agreed to "indemnify the Bank for amounts it incurred 'arising out of or resulting from the security interest granted [pursuant to the NPF VI Indenture] by virtue of any act or omission on the part of [NPF VI].'" <u>See</u> Notice of Removal, ¶ 7, fn. 2 (brackets in original). What the Defendants fail to recognize is that NPF VI has not been sued for its "act or omission." It is Pote and Mendell, who are not parties to the NPF VI Master Indenture, who have been sued. Thus, the terms of section 3.01 are clear that the NPF VI Master Indenture is inapplicable to the Defendants and the alleged NPF VI indemnification agreement is irrelevant to this action, as NPF VI cannot be bound by a judgment in this case.

The Defendants further fail to mention the effect of section 8.01(f) of the NPF VI Master Indenture, which provides in relevant part that "No provision of this Master Indenture shall be construed to relieve the Trustee [JP Morgan] from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct."

11

Retirement Sys. of Alabama v. J.P. Morgan Chase & Co., 285 B.R. 519

(M.D.Ala. 2002) is instructive on why section 8.01(f) of the NPF VI Master Indenture

defeats federal subject matter jurisdiction. In Retirement Sys. of Alabama, the Court

rejected the argument that indemnification clauses in the underwriting agreements

between WorldCom and its underwriters supported jurisdiction, even when there was a

Proof of Claim based on the indemnification claim filed in the WorldCom bankruptcy. Id.

at 523, 530. The Court construed the indemnification clause and determined that before a

claim filed by an underwriter could affect the WorldCom estate, the underwriter would

have to establish that it had made no untrue statements or omissions to WorldCom. Id. at

529. Finding that that hurdle made the "potential effect" of third party litigation on the

bankruptcy "speculative," Id. at 529, the court determined that there was no jurisdiction

and remanded the action based in part on that reason. Id. at 530-31. It is the same here, as

is it alleged that Pote and Mendell made untrue statements and omissions to the Plaintiffs

and section 8.01(f) of the NPF VI Master Indenture does not "relieve" any of the

Defendants of liability.

    In addition, Pote and Mendell fail to mention that they cannot seek indemnity

from NCFE as it was their wrongful acts that caused the demise of the NCFE entities.

Plainly put, it is alleged that neither Pote nor Mendell acted in good faith nor did they

reasonably believe their actions to be in the best interests of the corporation or the other

directors. Thus, there is no legitimate claim for indemnification by NCFE or the NCFE

entities. See R.C. §1702.12 (e)(1)[4]

---

[4] The Ohio statute, R.C. §1702.12 (e)(1), provides in pertinent part: "A corporation may indemnify or agree
to indemnify any person who was or is a party, or is threatened to be made a party, to any threatened,
pending, or completed civil, criminal, administrative, or investigative action, suit, or proceeding, other than
an action by or in the right of the corporation, by reason of the fact that the person is or was a director,
officer, employee, or agent of or a volunteer of the corporation, or is or was serving at the request of the
corporation as a director, officer, employee, member, manager, or agent of or a volunteer of another

Similarly, before a claim of Pote, Mendell or JP Morgan could affect the NCFE

entities' bankruptcy estate, JP Morgan would have to establish that it had made no untrue

statements or omissions. The Defendants avoid this step, leading them to erroneously

conclude that NCFE owes them indemnification from their wrongdoings in destroying

the NCFE entities. It is clearly disingenuous for JPMorgan, NPF VI's trustee, to seriously

posit that it could have an indemnification claim against NPF VI for the derelictions of

JPMorgan and its employees, especially in light of Pote and Mendell's positions on the

NPF VI and NPF XII board of directors and Pote's chairmanship of the audit committee.

Moreover, the bar in the bankruptcy statute to payment of speculative contingent

claims prevents a finding of jurisdiction since the Defendants' claims for possible

---

domestic or foreign nonprofit corporation or business corporation, a limited liability company, or a partnership, joint venture, trust, or other enterprise, against expenses, including attorney's fees, judgments, fines, and amounts paid in settlement actually and reasonably incurred by the person in connection with such action, suit, or proceeding, **if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation**, and, with respect to any criminal action or proceeding, if the person had no reasonable cause to believe the person's conduct was unlawful.

(2) A corporation may indemnify or agree to indemnify any person who was or is a party, or is threatened to be made a party, to any threatened, pending, or completed action or suit by or in the right of the corporation to procure a judgment in its favor, by reason of the fact that the person is or was a director, officer, employee, or agent of or a volunteer of the corporation, or is or was serving at the request of the corporation as a director, officer, employee, member, manager, or agent of or a volunteer of another domestic or foreign nonprofit corporation or business corporation, a limited liability company, or a partnership, joint venture, trust, or other enterprise against expenses, including attorney's fees, actually and reasonably incurred by the person in connection with the defense or settlement of such action or suit, **if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, except that no indemnification shall be made in respect of any of the following:**

**(a) Any claim, issue, or matter as to which the person is adjudged to be liable for negligence or misconduct in the performance of the person's duty to the corporation** unless, and only to the extent that, the court of common pleas or the court in which the action or suit was brought determines, upon application, that, despite the adjudication of liability but in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court of common pleas or such other court considers proper;

Id. (emphasis supplied)

13

contribution and indemnification, if any, are unripe.

Section 502(e)(1)(B) of the Bankruptcy Code states that:

> Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that ... such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution....

11 U.S.C. § 502(e)(1)(B).

Therefore, section 502(e)(1)(B) prevents any distribution from the estate on the basis of prospective contingent reimbursement claims. See Aetna Cas. & Sur. Co. v. Ga. Tubing Corp., 93 F.3d 56, 57 (2d Cir. 1996)(502(e)(1)(B) barred Aetna's claim, which was a contingent codebtor claim for reimbursement at the time of allowance or disallowance of such claim.); In re Drexel, 148 B.R. 982, 987 (Bankr.S.D.N.Y. 1992)(502(e)(1)(B) disallowance of contingent reimbursement claims applies to both contractual and noncontractual claims for indemnification.).

Furthermore, the underlying facts concerning the indemnity will have to be adjudicated before the current claims can affect the estate. In such cases, where Defendants speculate they "may have a claim" against the NCFE entities, which have not yet accrued and would require another lawsuit before it could have an impact on any bankruptcy proceeding, the Court can find that it lacks subject matter jurisdiction. See In re Federal Mogul Global, Inc., 300 F.3d 368, 381-2 (3d Cir. 2002).

In conclusion, regardless of how the state action concludes, it will neither increase nor decrease the size of the NCFE entities bankruptcy estate. The Plaintiffs are not suing the NCFE entities for any damages. Thus, the Defendants supposed contingent claims of indemnification and contribution will have no impact on the state action.

IV.    **Issues regarding the Defendants' insurance
coverage are not related to the NCFE entities bankruptcy estate**

The Defendants next contend that since Pote and Mendell are eligible for

Directors and Officers Liability Insurance, and there is an ongoing dispute between

NCFE and its insurer[5], the NCFE entities' bankruptcy estates could somehow be affected.

The Defendants do not offer any reasons why such a claim between NCFE and its insurer

could affect the NCFE entities' rights, liabilities, options, or freedom of action (either

positively or negatively) or how it will impact the handling and administration of the

bankrupt estate. Indeed, the dispute regarding coverage has already been decided, and, in

any event, Pote and Mendell have access to Directors and Officers insurance policies as a

result of the relationship with NCFE and their employer, JPMorgan.

In <u>Liberty Mut. Ins. Co. v. Lone Star Industries, Inc.</u>, 313 B.R. 9 (D.Conn. 2004)

the Court held that an Insurer's claim that it was not liable for defense and indemnity

costs of silicosis claims pending against an insured was not related to insured's

bankruptcy and thus could not be removed to federal court on that basis, even though

determination of insurer's liability would require the state court to interpret a settlement

agreement approved by bankruptcy court, where insured's plan of reorganization had

been confirmed, and bankruptcy court had asserted jurisdiction over the issue of whether

claims were discharged. The Court noted that Lone Star was asking for, in effect, a

finding that "federal jurisdiction exists simply by virtue of the necessity of interpreting

the Settlement Agreement and/or Plan of Reorganization, which are not substantive

federal law." <u>Id.</u> at 19.

---

[5] <u>National Century Financial Enterprises, Inc. v. Gulf Ins. Co., et al.</u>, Adv. Proc. No. 03-2288.

As in the <u>Lone Star</u> case, Pote and Mendell apparently want this Court to find that federal jurisdiction exists simply by virtue of the alleged necessity to interpret a Directors & Officers Liability Insurance policy, which is not substantive federal law.

Moreover, the litigation regarding a policy issued by Gulf Insurance Company has already been decided by the United States Bankruptcy Court for Southern District of Ohio in its Memorandum Decision in adversary case number 03-02288 dated January 10, 2005. Speaking for the bankruptcy court, Judge Donald E. Calhoun, Jr. determined that the Gulf Insurance Company Directors and Officers policy of $5 million and the excess policy with Great American, also for $5 million, provide coverage of at a minimum $500,000 each for Pote and Mendell. Furthermore, it is specifically noted and agreed that "at least four separate D & O policies issued through JPMorgan...provide coverage separate from the Gulf policy" to Pote and Mendell and that Pote and Mendell's incurred fees and expenses "have been indemnified by either JPMorgan or JPMorgan's D & O insurers."

What is more, two of the four JP Morgan D & O policies "have stated limits of $25,000,000. The two others, which do not provide director coverage to the Outside Directors [Pote and Mendell], provide JPMorgan indemnification coverage. As stipulated, JPMorgan has paid for the defense costs of the Outside Directors." Thus, the claim that there is an ongoing dispute between NCFE and its insurer and that the NCFE entities' bankruptcy estate could somehow be affected is without merit, as Pote and Mendell have insurance coverage and, ultimately, it is their employer that is responsible for the acts as alleged in the state action.

V.    **The Poulsens have not submitted to the jurisdiction**
      **of the bankruptcy court merely by filing proof of claims**

The Defendants' final argument is that since the Plaintiffs have submitted proofs of claims against the NCFE entities in the NCFE Bankruptcy Proceedings removal is "appropriate." The Defendants do not offer any case law or facts in support of their conclusion.

It is true that by filing a claim against the estate, a creditor triggers the process of allowance and disallowance of bankruptcy claims and an adversary proceeding seeking recovery against the creditor becomes part of that claims allowance process. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). However, this does not mean that the Poulsens are bound to bankruptcy court or federal court for actions against a non-debtor.

The fact that the Defendants concede that the state action is a non-core proceeding and that these claims are torts militates against any removal on the basis of the filing of a proof of claim, as the Poulsens did not "put the entire controversy on the table when it filed its proof of claim." See e.g. In re Sterling Optical Corp., 302 B.R. 792 (2003); Cf. In re Petrie Retail, Inc., 304 F.3d 223 (2d Cir. 2002)(a dispute between two non-debtors over the purchase of a lease in a bankruptcy sale was a core matter conferring jurisdiction to enforce a pre-existing injunction and to interpret the lease); See 28 U.S.C. § 157.

By positing this argument, the Defendants misconstrue the focus of the Plaintiffs' state action. As stated above, regardless of whether the Plaintiffs recover or not against the Defendants, the recovery does not affect NCFE entities' rights, liabilities, options, or freedom of action (either positively or negatively) or impact the handling and

administration of the bankrupt estate. Obviously, the Plaintiffs' proof of claim does not require the bankruptcy court to interpret the Plaintiffs' tort actions against the Defendants to determine what assets of the NCFE entities' estate should be distributed to the Plaintiffs.

The Defendants argument is further hampered by the fact that the Plaintiffs' proofs of claim were submitted against the NCFE entities bankruptcy estate. No recovery against Pote, Mendell or JPMorgan was sought by these proofs of claim. Indeed, the Poulsens' New York state claims against Pote, Mendell and JPMorgan were presented for the first time through this litigation. Thus, the facts do not fit the Defendants' argument that the Plaintiffs waived claims that have never previously been presented.

Moreover, the Poulsens have demanded a jury trial. In the case of a trustee and by implication a creditor, the filing of voluntary bankruptcy petition does not waive any right to a jury trial in proceeding against a debtor for tortious interference with debtor's business, coercion and duress, breach of contractual duty of good faith, unfair or deceptive business practices, and misrepresentation. See Germain v. Connecticut National Bank, 988 F.2d 1323 (2d Cir. 1993). Thus, as the Germain court noted, although it is reasonable that a creditor waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, one cannot "presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process." Id. at 1329. Accordingly, the Poulsens have not waived their right to proceed in state court against non-debtors for their state law claims, which must be decided by a jury.

VI.    **This Court should remand the state action based on mandatory, discretionary or equitable abstention**

If this Court should find that there is subject matter jurisdiction for the state action because it is "related to" the NCFE entities bankruptcy proceedings, this Court must exercise mandatory abstention under 28 U.S.C. §1334 (c)(1) or it should exercise discretionary abstention under 28 U.S.C. §1334 (c)(2), or equitably remand the state action pursuant to 28 U.S.C. § 1452(b).

   (A)  **Mandatory Abstention**

The conditions for Mandatory abstention are met by the state action. 28 U.S.C. § 1334(c), provides for mandatory abstention:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

> Id.

In evaluating these issues, the Court must first consider whether the conditions for mandatory abstention have been met. Pursuant to Section 1334(c)(2), mandatory abstention applies when: (1) the abstention motion was "timely" brought; (2) the action is based upon a state law claim; (3) the action is 'related to' a bankruptcy proceeding, as opposed to 'arising under' the Bankruptcy Code or 'arising in' a case under the Bankruptcy Code; (4) the sole federal jurisdiction for the action is Section 1334; (5) there is an action 'commenced' in state court; and (6) the action is capable of being 'timely adjudicated' in state court. Renaissance Cosmetics, Inc. v. Development Specialists Inc., 277 B.R. 5, 12 (S.D.N.Y.2002). See also In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig., 323

F.Supp.2d 861, 873 (S.D.Ohio 2004); Robinson v. Mich. Consol. Gas Co. Inc., 918 F.2d

579, 584 n. 3 (6th Cir. 1990) (the provisions of 1334(c)(2) apply to actions removed from

state court).

      All six requirements for mandatory abstention are met here. The Plaintiffs have

filed a motion for abstention with the motion to remand satisfying the first requirement.

The state action further satisfies the next four factors, specifically: (1) the Plaintiffs

claims involve only state law; (2) assuming that this Court determines that the state action

is "related to" the NCFE entities bankruptcy proceedings, then the state action is related

to a bankruptcy matter but does not arise under it; (3) the Defendants have presented no

independent basis for federal jurisdiction; and (4) The state action has been commenced

in the New York state courts.

      The final factor, that the action can be timely adjudicated in state court, is also

met. Presumably, if the case is not remanded to New York State Court, it will be

transferred to the United States District Court for the Southern District of Ohio, Eastern

Division in the case of In re National Century Financial Enterprises Inc. Investment

Litigation, 2:03-md-1565-JLG-MRA ("MDL Proceedings"). As the Defendants Notice of

Removal states, there are seventeen pending civil lawsuits in the MDL and 2 actions

pending directly before the United States District Court for the Southern District of Ohio,

Eastern Division. These nineteen cases involve multiple plaintiffs and defendants and

many different layers of factual and legal issues unrelated to the issues in this state action.

Some of these nineteen cases have been pending for at least two years and certainly all of

these cases will take several more years to conclude, given that the cases are still in the

preliminary motions stage.  Obviously, judicial economy would not be served by setting

this action with nineteen other cases, none of which are based on New York law. There can be no complaint of "forum shopping" or forum *non conveniens* as the Plaintiffs are domiciled in Florida, the Defendants have been sued in the State where they reside and work and, presumably, the vast majority of the defendants' corporate documents are in New York. Certainly, the Defendants should prefer to be judged in their home state, unless they are just Court shopping to delay a determination of their wrongdoing.

Discovery in this state action will be concluded within 15 months as the issues are relatively straightforward and involve only a moderate amount of discovery. Indeed, the plaintiffs have already begun discovery by propounding a Request for Production of Documents upon the Defendants.

The New York State Supreme Court routinely handles these actions in its Commercial Division, Supreme Court, Civil Branch, New York County. The Commercial Division of Supreme Court, Civil Branch, New York County, comprising six Justices, handles complex commercial matters filed in New York County, which is one of the world's leading centers of commerce, banking, finance, television, publishing, and other businesses. Per the Court's Commercial Division Operating Statement, Part I "The goal of the Division is to provide efficient, expeditious, sound, and inexpensive adjudication of such cases, for the benefit of all parties and in the interest of the general public."

In the Commercial Division, Supreme Court, Civil Branch, New York County, prior to removal, the Plaintiffs filed a Request for Judicial Intervention ("RJI"). Per the Court, a preliminary conference will be held, where practicable, within 45 days of assignment to a Commercial Division Justice. Pursuant to Rule 202.19 of the Uniform Rules for the Trial Courts, cases must be assigned to a Differentiated Case Management

track, of which there are three – expedited (discovery to be completed within eight months from filing of the RJI), standard (discovery to be completed within 12 months), or complex (discovery to be completed within 15 months). A trial date is set at the preliminary conference.

Given that there are not nineteen other cases to decide at the same time, involving different issues of fact and law, this state action can be resolved in a far more timely manner than the other nineteen cases pending in Ohio.  Therefore, having met the factors for mandatory abstention, the Court must abstain from hearing the state action and remand the cause to the New York State Supreme Court for such proceedings.

      B)    **Discretionary Abstention**

In the absence of mandatory abstention, the Court may also consider discretionary abstention pursuant to Section 1334(c)(1), which authorizes abstention in the interests of justice or comity. 28 U.S.C. § 1334(c)(1) provides for discretionary abstention:

> (1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

> Id.

In <u>Allen v. City Finance Co.</u>, 224 B.R. 347 (S.D.Miss.1998) the court considered whether discretionary abstention was appropriate, citing the following relevant factors: (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficulty or unsettled nature of the applicable law; (4) presence of a related proceeding commenced in state court or other nonbankruptcy proceeding; (5)

jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action. Id. at 353 (citations omitted). When considering discretionary abstention, "federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." In re White Motor Credit, 761 F.2d 270, 274 (6th Cir. 1985) (citation omitted).

Turning to this case, and incorporating the analysis regarding mandatory abstention in section VI(A) of this memorandum of law, the factors of discretionary abstention point toward remand. The Plaintiffs and Defendants are not the bankrupt entities and therefore nothing that happens in this lawsuit will affect the administration of the bankruptcy estates. Obviously, since the parties are not in bankruptcy, there are no bankruptcy issues that the Court must decide and this matter is admittedly not a core proceeding. State law issues predominate this case, including the unique duties of corporate directors as stated in New York Business Corporations Chapter 4, Article 7, including but not limited to § 720 (Action against directors and officers for misconduct).

This matter involves matters of New York public policy and New York public interest. It is undeniable that, because this case involves purely issues of state law and state courts are in the best position to resolve the legal matters at stake, comity is a material factor. Indeed, just a demand for jury trials in non-core proceedings has been considered a sufficient ground for an equitable remand. See Zweygart v. Colorado Nat'l Bank, 52 B.R. 229, 234-35 (Bankr.D.Colo. 1985). "Congress has made it plain that, in respect to noncore proceedings such as this (i.e., cases which assert purely state law causes of action), the federal courts should not rush to usurp the traditional precincts of the state court." Mattingly v. Newport Offshore, Ltd., 57 B.R. 797, 799-800 (D.R.I. 1986) (when removing party raised jury trial rights to avoid reference of non-core state law action to Bankruptcy Court, District Court instead ordered remand).

Most importantly, the prejudice to the involuntarily removed parties by the forum shopping of the defendants is palpable as their causes of action will be wedded to  nearly 20 other dissimilar cases. There is simply no good reason for this matter to proceed in federal court. The Defendants only seek to delay the Poulsens their day in court.

C)     **Equitable Remand**

In the alternative, this Court should equitably remand the state action to New York pursuant to 28 U.S.C. § 1452(b), which provides:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.
>
> Id.

The analysis under § 1452(b) is largely the same as under § 1334(c)(1). See Mann v. Waste Management of Ohio, 253 B.R. 211, 215 (2000)("Permissive abstention under § 1334(c)(1) and equitable remand under § 1452(b) are essentially identical.")

In determining whether remand is equitable pursuant to § 1452(b), the Court must consider the "Drexel Factors," named after the decision in which they were articulated, In re Drexel Burnham Lambert Group, Inc., 130 B.R. 405, 407 (S.D.N.Y. 1991), which encompass: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntary removed defendants. Id.

Applying the Drexel factors to this state action, in conjunction with the analysis of mandatory and discretionary abstention, it is plain that fairness, economy and common sense dictate that this case should be remanded to state court on equitable grounds. Here, only issues of state law are presented. Some of these state law issues are unique and will present issues for the New York State Court to interpret and resolve the difficulty or unsettled nature of the applicable state law. The New York State Court has a specific commercial division that is well equipped to handle this matter. Any relation between this state action and the NCFE entities bankruptcy case is remote at best, there is a right to a jury trial and the prejudice to the involuntary removed Plaintiffs through the delay of their state law causes of action is manifest. In contrast, the defendants cannot credibly complain that they will have the opportunity to have their case heard in their forum state, in the county where they work.

When a district court finds that abstention is appropriate, remand pursuant to 28 U.S.C. § 1452(b) is favored. In re Premier Hotel Dev. Group, 270 B.R. 243, 258 (Bankr.E.D.Tenn. 2001)("The presence of factors suggesting discretionary abstention pursuant to 1334(c)(1) and factors requiring mandatory abstention under 1334(c)(2) provides ample equitable grounds for remand of the lawsuit to state court.")

In sum, if this Court should find that it has subject matter jurisdiction over this state action, this Court should exercise mandatory or discretionary abstention under 28 U.S.C. §1334 (c) to abstain from hearing the state action in the interest of justice and comity with the New York State Supreme Court or, in the alternative, this Court should equitable remand the state action to New York pursuant to 28 U.S.C. § 1452(b).

## CONCLUSION

WHEREFORE, the Plaintiffs Lance and Barbara Poulsen respectfully request that the above captioned action be remanded to the Supreme Court of the State of New York, County of New York, from the United States District Court for the Southern District of New York, or in the alternative that Court exercise mandatory or permissive abstention and remand the above captioned action to the Supreme Court of the State of New York, County of New York and for further relief as this Court deems necessary and just.

Dated: December 27, 2005

Respectfully Submitted,

Stephen L. Snyder
Roy L. Mason
Andrew G. Slutkin
Philip R. Stein
Robert H. B. Cawood
SNYDER, SLUTKIN & SNYDER
1829 Reisterstown Road, Suite 100
Baltimore, Maryland 21208
410-653-3700

Lead Counsel

FELLIG, FEINGOLD,
EDELBLUM & SCHWARTZ, LLC
821 Franklin Avenue, Suite 203
Garden City, New York 11530
(516) 338-1720


**s/Thomas J. Fellig, Esq.**
By:  Thomas J. Fellig, Esq. (TF-4455)

Local Counsel


Attorney for Plaintiffs, Lance Poulsen
And Barbara Poulsen

# TABLE OF AUTHORITIES

## Cases

Aetna Cas. & Sur. Co. v. Ga. Tubing Corp., 93 F.3d 56, 57 (2d Cir. 1996) .................... 14

Allen v. City Finance Co., 224 B.R. 347 (S.D.Miss.1998)............................................... 22

Celotex Corp. v. Edwards, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 1499, 131 L.Ed.2d
    403 (1995) ............................................................................................................... 6-7

Germain v. Connecticut National Bank, 988 F.2d 1323 (2d Cir. 1993) ........................... 18

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) 17

In re Cuyahoga Equip. Corp., 980 F.2d 110 (2d Cir. 1992) .............................................. 7

In re Drexel Burnham Lambert Group, Inc., 130 B.R. 405, 407 (S.D.N.Y. 1991)........... 25

In re Drexel, 148 B.R. 982, 987 (Bankr.S.D.N.Y. 1992)................................................. 14

In re Federal Mogul Global, Inc., 300 F.3d 368, 381-2 (3d Cir. 2002) ........................... 14

In re Global Crossing, Ltd. Securities Litigation, 2003 WL 22705127, *1 (S.D.N.Y. Nov.
    14, 2003) .................................................................................................................... 4

In re Manshul Construction Corp., 225 B.R. 41, 45 (Bankr.S.D.N.Y. 1998)..................... 8

In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig., 323 F.Supp.2d 861, 873 (S.D.Ohio
    2004) ........................................................................................................................ 19

In re Petrie Retail, Inc., 304 F.3d 223 (2d Cir. 2002) ...................................................... 17

In re Premier Hotel Dev. Group, 270 B.R. 243, 258 (Bankr.E.D.Tenn. 2001) ................ 26

In re Salem Mortgage Co., 783 F.2d 626, 634 (6th Cir. 1986)........................................... 8

In re Sterling Optical Corp., 302 B.R. 792 (2003)........................................................... 17

In re Turner, 724 F.2d 338, 341 (2d Cir. 1983) ................................................................. 7

In re White Motor Credit, 761 F.2d 270, 274 (6th Cir. 1985) .......................................... 23

Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ......................... 17

Liberty Mut. Ins. Co. v. Lone Star Industries, Inc., 313 B.R. 9 (D.Conn. 2004) ............. 15

Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998)..................................................... 6

Lupo v. Human Affairs Int'l, 28 F.3d 269, 274 (2d Cir. 1994).......................................... 6

Mann v. Waste Management of Ohio, 253 B.R. 211, 215 (N.D. Ohio 2000) ................... 25

Mattingly v. Newport Offshore, Ltd., 57 B.R. 797, 799-800 (D.R.I. 1986)..................... 24

Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984)............................................... 6-7, 8-11

Renaissance Cosmetics, Inc. v. Development Specialists Inc., 277 B.R. 5, 12
    (S.D.N.Y.2002) ........................................................................................................ 19

Retirement Sys. of Alabama v. J.P. Morgan Chase & Co., 285 B.R. 519 (M.D.Ala. 2002)
    ............................................................................................................................ 11-12

Robinson v. Mich. Consol. Gas Co. Inc., 918 F.2d 579, 584 n. 3 (6th Cir. 1990) ...... 19-20

Zweygart v. Colorado Nat'l Bank, 52 B.R. 229, 234-35 (Bankr.D.Colo. 1985) .............. 24

## Statutes

11 U.S.C. § 502(e)(1)(B) ................................................................................................ 14

28 U.S.C. § 1334................................................................................... 1, 2, 4, 5, 7, 20, 24

28 U.S.C. § 1452................................................................................... 1, 3, 4, 5, 20, 26, 28

28 U.S.C. § 157............................................................................................................... 20

New York Business Corporations § 720............................................................. 3, 4, 8, 23

R.C. §1702.12 (e)(1) ................................................................................................ 12-13

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel who have registered as CM/ECF participants, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants as indicated on the service list below.

**s/ Thomas J. Fellig, Esq**
Thomas J. Fellig, Esq. (TF-4455)
FELLIG, FEINGOLD,
EDELBLUM & SCHWARTZ, LLC
821 Franklin Avenue, Suite 203
Garden City, New York 11530
(516) 338-1720

### U.S. Mail Service List

Barry R. Ostranger
Mary Kay Vyskocil
Andrew T. Frankel
Kyle Lonergan
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Attorneys for Harold W. Pote
and Thomas G. Mendell

John M. Callagy
William A. Escobar
Nicholas J. Panarella
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212) 808-7800

Michael A. Pearce
JPMorgan Chase & Co. Legal Department
One Chase Manhattan Plaza, 26th Floor
New York, NY 10081
(212) 552-2852

Attorneys for JPMorgan Chase & Co.